## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Protégé Biomedical, LLC<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Duff & Phelps Securities, LLC and<br>Philip I. Smith<br><br>　　　　Defendants. | **NOTICE OF REMOVAL** |

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1441 & 1446, Defendants Duff & Phelps Securities, LLC ("Duff & Phelps") and Philip I. Smith ("Smith") (collectively, "Defendants") hereby remove the matter *Protégé Biomedical, LLC v. Duff & Phelps Securities, LLC and Philip I. Smith*, Case File No. 27-CV-19-19740, from the docket of the Minnesota District Court for the County of Hennepin, Fourth Judicial District to the United States District Court for the District of Minnesota. This action is being removed on the ground that this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff Protégé Biomedical, LLC and Duff & Phelps are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Defendant Smith is fraudulently misjoined.

## I.　　PROCEDURAL HISTORY

1.　　Plaintiff Protégé Biomedical, LLC filed a Verified Complaint and Verified Petition for Mandamus ("Complaint") in the Minnesota District Court for the County of Hennepin, Fourth Judicial District (the "State Court Action") on November 27, 2019. The

State Court Action has been assigned Case File No. 27-CV-19-19740. Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint in the State Court Action is attached as **Exhibit 1**.

2.      Duff & Phelps was served with a summons in the State Court Action on December 3, 2019. Counsel for Smith received a request to waive service, but has not yet signed or returned that request.

3.      Plaintiff's petition for an alternative writ of mandamus is pending in the State Court Action. No other motions or proceedings are pending.

4.      Defendants have not answered, moved, or otherwise entered an appearance in the State Court Action.

5.      Plaintiff is maintaining a related action in the United States District Court for the District of Minnesota, *Protégé Biomedical, LLC v. Z-Medica, LLC*, No. 0:18-cv-03327-JRT-HB (the "Related Federal Action"). Neither Duff & Phelps nor Smith are parties in the Related Federal Action. Plaintiff included the complaint and a memorandum opinion in the Related Federal Action as Exhibits J and K to its Complaint in the State Court Action.

## II.    PARTIES

6.      Plaintiff is a citizen of Minnesota. It alleges that its principal place of business is in Minnesota. (Compl. ¶ 4.) The Minnesota Secretary of State website indicates that Plaintiff was incorporated in Minnesota.

7.      Duff & Phelps is incorporated in Delaware, and its principal place of business is in New York.

– 2 –

8.      Smith is a citizen of Minnesota. For the reasons given below, Smith was fraudulently misjoined to this action.

## III.    PROCEDURAL REQUIREMENTS FOR REMOVAL

9.      Defendants have satisfied all requirements for removal set forth under 28 U.S.C. § 1446.

10.     Removal is timely under 28 U.S.C. § 1446(b)(1). Defendants have filed this Notice of Removal within 30 days after receipt by service or request for waiver of service of the Complaint.

11.     Venue is proper in this Court, for removal purposes only, pursuant to 28 U.S.C. § 1446(a), because this case was pending in Hennepin County, Minnesota, and this Court is "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

12.     Pursuant to 28 U.S.C. § 1446(b)(2), all defendants that have been served join in this Notice of Removal.

13.     Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly file a copy of this Notice with the Clerk of the Minnesota District Court for the County of Hennepin, Fourth Judicial District, and serve a copy on all parties.

## IV.    GROUNDS FOR REMOVAL

14.     A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). This Court has original jurisdiction under 28 U.S.C. § 1332(a).

15.    Defendants' recitation of the claims in the State Court Action for purposes of establishing grounds for removal is not a concession that the claims have merit. They do not have merit. Defendants reserve all rights and applicable defenses to the claims and legal theories in the State Court Action, and deny that Plaintiff is entitled to any relief from Duff & Phelps or Smith.

16.    Plaintiff's real grievance is with the defendant in the Related Federal Action and is pursuing Duff & Phelps and Smith in the State Court Action (a) because it is disappointed with its slow progress in the Related Federal Action and (b) to avoid its contractual duty to indemnify Duff & Phelps for the costs of responding to subpoenas in that action. Plaintiff joined Smith—an employee of Duff & Phelps—solely to defeat removal to federal court. But Smith was not a party to any of the contracts on which Plaintiff is suing, there is no allegation that Smith was acting outside the scope of his duties and employment by Duff & Phelps, and Plaintiff's engagement letter with Duff & Phelps not only expressly agreed that none of Duff & Phelps' employees such as Smith had any relationship with or obligations to Plaintiff, but further expressly released Duff & Phelps' employees from any liability to Plaintiff.  It is clear that Smith was fraudulently joined to evade this Court's jurisdiction, and so this Court should ignore his citizenship in assuming jurisdiction over this action as it has over the Related Federal Action.

A.    **Plaintiff's allegations**

17.    Plaintiff researches, invents, and develops hemostatic (or blood-clotting) products. (Compl. ¶ 6.) Plaintiff alleges that it engaged Duff & Phelps, a financial services company, to assist it in selling itself. (Compl. ¶ 23.) The relationship was born out of an

– 4 –

engagement letter between Duff & Phelps and Plaintiff that was signed by Smith on behalf of Duff & Phelps and by one of Plaintiff's owners on December 1, 2017. (*Id.*) That engagement letter, attached as Exhibit B to the Complaint, provides in the most clear terms as follows:

> The obligations of D&P are solely corporate obligations. No director, officer, employee, shareholder or controlling person of D&P shall be subjected to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement.

(Compl. Ex. B at Sched. A, ¶ E.) There is no allegation that Smith acted outside the scope of his duties and employment by Duff & Phelps in signing the engagement letter. Yet Plaintiff nonetheless falsely alleges that, in executing the engagement letter, Smith, too, contracted with Plaintiff to assist in selling it. (Compl. ¶ 23.) There is no factual basis provided for that conclusory (and false) allegation, which runs directly contrary to the facts that are included with the complaint by virtue of its attachment and inclusion of the actual terms of the engagement letter.

18.    Plaintiff also alleges that on January 19, 2018, Defendants approached Doug Schillinger ("Schillinger") about selling Plaintiff to Z-Medica LLC. (Compl. ¶ 82.) Schillinger is a member of Z-Medica's board of directors and a managing member at DW Management Services, LLC d/b/a DW Healthcare Partners ("DWHP"), which owns a significant portion of Z-Medica. (Compl. ¶¶ 16, 21–22.)

19.    Schillinger executed a nondisclosure agreement (the "NDA," attached as Exhibit D to the Complaint) on January 23, 2018. (Compl. ¶ 83.) Schillinger did not fill in

the name of the Buyer, and identified himself as a managing director of DWHP in the signature block. (*Id.*)

20.     Plaintiff alleges on information and belief that Schillinger never represented that he was not acting as an agent for Z-Medica in signing the NDA. (Compl. ¶ 84.) Plaintiff alleges that Defendants assumed that Schillinger was acting as an agent for Z-Medica and that Z-Medica was thus bound by the NDA. (*Id.*) Plaintiff alleges that, "based on this uncontradicted assumption, Duff & Phelps and Smith informed Wuolletts [Plaintiff's owners] that (1) Z-Medica was subject to the NDA and (2) a conference call between Protégé and Z-Medica was being arranged. Ex. F." (*Id.*)

21.     Notably, the email Plaintiff refers to that allegedly informed Plaintiff that Z-Medica was subject to the NDA was not sent by Smith. (*See* Compl. Ex. F.)

22.     On February 9, 2018, Plaintiff's owners participated in a conference call with Schillinger, representatives from Duff & Phelps, including Smith, Z-Medica's chief operating officer, and Z-Medica's then-director of corporate development. (Compl. ¶ 85.) On that call, Plaintiff's owners confirmed, "we're all under an NDA," and Plaintiff alleges that "no one on the February 9, 2018 conference call—notably Schillinger and Z-Medica's two directors—denied that Z-Medica was 'under an NDA.'" (Compl. ¶ 85.) Plaintiff does not allege Smith said anything on that call.

23.     Plaintiff alleges that its owners disclosed Plaintiff's confidential information to Z-Medica on the February 9, 2018 conference call. (Compl. ¶ 86.) Plaintiff's owners also supplied a prototype of Plaintiff's gauze product to Z-Medica for testing on April 17, 2018. (Compl. ¶ 91.)

24.    Plaintiff alleges that, "[w]hether or not it was subject to the NDA as the unidentified Buyer therein, Z-Medica received Protégé's Confidential Information under circumstances where it had a duty to (1) keep the information confidential and (2) not use it for its own benefit." (Compl. ¶ 88.)

25.    Plaintiff alleges that Z-Medica did, in fact, wrongly use Plaintiff's confidential information to its benefit by relying on and incorporating it into a continuation patent application Z-Medica filed on February 9, 2018. (Compl. ¶ 90.) On May 5, 2018, Z-Medica notified Plaintiff that it was no longer interested in acquiring it. (Compl. ¶ 92.)

26.    Plaintiff alleges that its gauze product was cleared by the Food & Drug Administration for use in the human market on September 19, 2018. (Compl. ¶ 93.) Plaintiff alleges that Z-Medica's continuation patent application was approved on October 2, 2018, and that eight days later Z-Medica sent it a cease-and-desist letter demanding that Plaintiff not market its gauze product, based in part on the patent that was the subject of the continuation patent application. (Compl. ¶¶ 93–94.) Plaintiff alleges that this caused several "imminent" business deals to fall through. (Compl. ¶ 95.)

27.    In November, 2018, Plaintiff filed the Related Federal Action against Z-Medica and DWHP.[1] On January 14, 2019, Plaintiff without explanation voluntarily dismissed the action against DWHP without prejudice. *See* Notice of Voluntary Dismissal, *Protégé Biomedical LLC v. Z-Medica LLC*, No. 0:18-cv-3227-JRT-HB at Dkt. No. 44 (D. Minn. Jan. 14, 2019).

_____

[1] Plaintiff alleges that it filed the Related Federal Action on November 16, 2018, but the complaint is dated November 19, 2018. (*Compare* Compl. ¶ 96 *with* Compl. Ex. J.)

28.     On January 25, 2019, Plaintiff filed an amended complaint against Z-Medica claiming (1) breach of the NDA; (2) violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836; (3) violation of the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01 et seq.; (4) unjust enrichment; (5) tortious interference; (6) declaratory judgment of non-infringement, and (7) seeking declaratory judgment of invalidity of Z-Medica's patents. (Compl. ¶ 96; *see also* First Amended Complaint, *Protégé Biomedical*, No. 0:18-cv-3327-JRT-HB at Dkt. No. 52 (D. Minn. Jan. 25, 2019) (attached as **Exhibit 2** and cited as "Fed. Compl.")).

29.     In the Related Federal Action, Plaintiff alleged that "[a]t all times, Mr. Schillinger held himself out as possessing authority to sign an NDA on behalf of Z-Medica. Protégé relied on Mr. Schillinger's actual, apparent, and implied authority to enter into the NDA on behalf of Z-Medica." (Fed. Compl. ¶ 19.) Plaintiff further alleged that "[o]n information and belief, Mr. Schillinger was authorized by Z-Medica to sign the NDA on Z-Medica's behalf." (Fed. Compl. ¶ 20.)

30.     Neither the complaint nor the amended complaint in the Related Federal Action make any mention of Smith.

31.     Z-Medica moved to dismiss the Related Federal Action, and on July 24, 2019, the court denied that motion with respect to Plaintiff's trade secret and patent claims. (Compl. ¶ 97; Compl. Ex. K.) The court found that Plaintiff had not pled sufficient facts about Z-Medica's conduct to show that Schillinger acted with actual or apparent authority in signing the NDA, and so dismissed Plaintiff's breach of contract claim *without* prejudice. (Compl. ¶ 97; Compl. Ex. K at 15–17.)

32.    Rather than amend its complaint in the Related Federal Action, including an amendment to address the without-prejudice dismissal of the breach of NDA claim, Plaintiff sent Defendants a letter around September 24, 2019 indicating that "Protégé will be looking to D&P to make it whole." (Compl. ¶ 98; Compl. Ex. L.) Plaintiff later filed the State Court Action.

**B.    Smith was fraudulently misjoined to destroy complete diversity**

33.    Smith was not a party to the engagement letter on which Plaintiff is suing, and so Plaintiff cannot possibly recover from Smith. Indeed, that engagement letter is clear that the only obligations are between Plaintiff and Duff & Phelps, not between Plaintiff and any Duff & Phelps employee (Smith included). To drive that point home, the engagement letter expressly releases all Duff & Phelps employees from any liability to Plaintiff. There is no allegation that Smith acted *ultra vires*, outside the scope of this duties and employment by Duff & Phelps. Indeed, many of Plaintiff's causes of action are baseless as against both Duff & Phelps and Smith, for which Defendants reserve all rights to seek appropriate relief, but the inclusion of Smith in this lawsuit is especially egregious, and he was joined as a defendant solely to defeat the diversity jurisdiction of this Court, which is already presiding over the Related Federal Action. As such, this Court may ignore Smith's citizenship for purposes of determining that it has subject-matter jurisdiction over this action.

34.    "A party has been fraudulently joined if there is 'no reasonable basis in fact and law' for the claim brought against it. The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no

– 9 –

reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Services, LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012), *as corrected* (Nov. 28, 2012) (citation omitted). That standard is met if it is clear under governing state law that the complaint does not state a claim against the nondiverse defendant. *Knudson v. Systems Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011).

> **1.    Plaintiff's contract claims have no reasonable basis in fact or law because Smith is not a party to the engagement agreement**

35.    Plaintiff's real complaint is with Z-Medica, Schillinger, and DWHP, the parties that on Plaintiff's allegations actually harmed it. Much of the Complaint is dedicated to arguing that Z-Medica stole Plaintiff's confidential information. (Compl. ¶ 72–78, 87–95). And despite blaming Duff & Phelps and Smith for how Schillinger is identified on the NDA, Plaintiff admits that the NDA is irrelevant to the wrong Z-Medica allegedly did to Plaintiff: "*[w]hether or not it was subject to the NDA* as the unidentified Buyer therein, Z-Medica received Protégé's Confidential Information under circumstances where it had a duty to (1) keep the information confidential and (2) not use it for its own benefit." (Compl. ¶ 88 (emphasis added).)

36.    Indeed, a key element of the relief Plaintiff seeks to compel is that Duff & Phelps and Smith fund a lawsuit against Z-Medica and initiate an arbitration against DWHP. (Compl. ¶¶ 79–81, 99, 117 (identifying litigation funding as the remedial action that Plaintiff demands); *see also id.* ¶¶ 122–24 (faulting Defendants for not remedying the

alleged breaches), ¶¶ 147–48 (refusal to remedy the alleged breaches justifies a writ of mandamus).

37.    Instead, Plaintiff is suing Duff & Phelps and Smith based on a tortured reading of the engagement letter between Plaintiff and Duff & Phelps. But Smith is not a party to that engagement letter, the letter expressly precludes claims against the parties' agents and employees, and Plaintiff's contract claims against Smith have no reasonable basis in law or fact.

38.    Count One of Plaintiff's Complaint is styled "Duff & Phelps and Smith's 'liability' to Protégé for its 'losses' due to their 'gross negligence' in their performance of their contractual 'obligations' to Protégé under the engagement agreement."

39.    Count Two of Plaintiff's Complaint is styled "Duff & Phelps and Smith's 'liability' to Protégé for its 'losses' due to their breaches and anticipatory breaches of the contractual 'obligations' to Protégé under the engagement agreement."

40.    The engagement letter provides that it "shall be governed and construed in accordance with the laws of the State of New York applicable to agreements executed and to be performed entirely within said state." (Compl. Ex. B. at ¶ 16.)

41.    Under both Minnesota and New York law, it is well established that "an agent for a disclosed principal 'will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Savoy Record Co. v. Cardinal Export Corp.*, 15 N.Y.2d 1, 4 (1964) (quoting *Mencher v. Weiss*, 306 N.Y. 1, 4 (1953)); *see also Kost v. Peterson*, 292 Minn. 46, 49 (1971) ("Where an agent, acting for a disclosed principal, enters into a contract with

third persons for and on account of his principal and in his name, the contract is that of the principal and does not give rise to any contractual obligation running to the agent.")

42.    The engagement letter plainly discloses that Smith did not assume any individual liability. (Compl. Ex. B at 6.) It is signed "Sincerely, Duff & Phelps Securities, LLC," followed by Smith's signature and an indication of his title as a managing director. (*Id.* (capitalization altered)). Thus, far from containing "clear and explicit evidence of [Smith's] intention" to be personally bound, the engagement letter expressly disclaims any such obligation or potential liability on the part of Smith or any other agent or employee of Duff & Phelps:

> The obligations of D&P are solely corporate obligations. No director, officer, employee, shareholder or controlling person of D&P shall be subjected to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement.

(Compl. Ex. B at Sched. A, ¶ E.)

43.    Plaintiff's allegation that it is not a "person" under that provision is meritless, and no state court would accept it. (*See* Compl. ¶ 60.) Plaintiff alleges that if Plaintiff were a "person" under that that provision, "it would otherwise contravene and render nugatory the above-discussed 'Indemnification' provision's expressly 'liability' of 'any Indemnified Persons.'" (*Id.*) But the provision itself is explicit that it applies to "part[ies] to this Agreement," i.e., to Plaintiff. (Compl. Ex. B at Sched. A, ¶ E.) Moreover, Plaintiff's assertion that the indemnification clause creates liability (that a plain reading of Compl. Ex. B at Sched. A, ¶ E would, Plaintiff asserts, destroy) is equally specious. That clause reads:

> The Company also agrees that neither D&P nor any Indemnified Person shall have any liability to the Company, its owners, parents, creditors or securityholders for or in connection with its engagement, except such liability for Losses incurred by the Company which are judicially determined to have resulted primarily and directly from D&P's or such Indemnified Person's willful misconduct or gross negligence, or related to a breach by D&P of this Agreement.

(Compl. Ex. B at Sched. A, ¶ A.) That is a release of liability, not the creation of liability where none otherwise would exist. It certainly is not "clear and explicit evidence of [Smith's] intention to substitute or superadd his personal liability for, or to, that of" Duff & Phelps. *Savoy Record Co*, 15 N.Y.2d at 4 (quotation marks and citation omitted).

44.     Plaintiff's case against Smith rests on holding a non-party to a contract liable under the contract, under circumstances where the words of the contract say exactly the opposite. Moreover, there is no allegation that Smith acted *ultra vires* or otherwise in a manner that was outside the scope of his duties and employment by Duff & Phelps. Accordingly, basic agency principles would preclude liability against Smith personally, even without the express elimination of liability under the words of the contract Plaintiff signed.  There is no reasonable basis in fact or law for Plaintiff's contract-based claims against Smith, and the assertion of those claims was done fraudulently to prevent the assertion of this Court's jurisdiction.

### 2.     Plaintiff's other counts are reliant on a relationship with Smith that the engagement letter expressly states does not exist

45.     In a similar way, Plaintiff's other causes of action are all based on a relationship with Plaintiff created by the engagement letter, and that engagement letter is clear that no such relationship is created with respect to Smith. And a number of Plaintiff's

alternative legal theories have no basis in law against any defendant whatsoever. Indeed, one claim alleges that Duff & Phelps (and Smith) engaged in the unauthorized practice of law, a dangerous and reckless assertion as to which there is no alleged basis in fact.

46.     Count Three of Plaintiff's Complaint is styled "Duff & Phelps and Smith's breaches and anticipatory breaches of their common law and statutory duties to Protégé." Plaintiff alleges that those supposed common law and statutory duties are grounded in a fiduciary relationship, principal-agent responsibilities, professional duties, and the prohibition on the unlawful practice of law. (Compl. ¶ 120.)

47.     Count Four of Plaintiff's Complaint seeks declaratory judgment on the same grounds as Counts One through Three.

48.     Count Five of Plaintiff's Complaint seeks a writ of mandamus against Duff & Phelps and Smith based on the same grounds as Counts One through Three.

### a.     The engagement letter blocks all recovery from Smith for fiduciary duties, principal-agent relationships, or professional negligence.

49.     The theories of recovery that form the main thrust of Count Three rely on a relationship between Smith and Plaintiff that, as discussed above, the engagement letter expressly disclaims. (Compl. Ex. B at Sched. A, ¶ E.) Plaintiff agreed when it engaged Duff & Phelps that none of Duff & Phelps's employees had any legal relationship with or obligations to Plaintiff outside the scope of their actions as agents for Duff & Phelps, and Plaintiff released all claims against Duff & Phelps's employees. Plaintiff cannot now disavow that agreement to sue Smith, and Plaintiff obviously has done so only to defeat this Court's exercise of jurisdiction.

50.    Moreover, contractual disclaimers of a fiduciary duty mean that no fiduciary duty can exist, especially where the contract involves an arms-length agreement that would not give rise to fiduciary duties in any event. *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207–08 (2d Cir. 2018); *B. Riley FBR, Inc. v. Clarke*, 2019 WL 4242537, at *5 (D. Minn. Sept. 6, 2019). Here, the engagement letter is clear:

> D&P is not and shall not be construed as a fiduciary of the Company [viz. Protégé Biomedical LLC] and shall have no duties or liabilities to the equity holders or creditors of the Company or any other person by virtue of this Agreement and the retention of D&P hereunder, all of which are hereby expressly waived.

(Compl. Ex. B at ¶ 18.) There is no reasonable basis for any claim against Smith for violating a fiduciary duty to Plaintiff which Plaintiff agreed did not arise in the first place— not as to Smith and not as to Duff & Phelps.

51.    Similarly, Plaintiff cannot appeal to general agency or professional negligence principals to impose duties on Smith when the engagement letter expressly releases all claims for simple negligence. (*See* Compl. Ex. B at Sched. A, ¶ A).

52.    Putting the exclusion of liability in the engagement terms aside, it is well established that a placement agent or financial advisor is not subject to suit for professional negligence. *Leather v. U.S. Tr. Co. of New York*, 720 N.Y.S.2d 448, 449–50 (N.Y. App. Div. 2001); *Robbin Bay Assocs., LLC v. Merrill Lynch & Co.*, 2008 WL 2275902, at *5 (S.D.N.Y. June 3, 2008); *see also U.S. Bank, N.A. v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 720 (D. Minn. 2017) (Minnesota's malpractice claims are "limited to a handful of specialized professionals.").

> **b.    Plaintiff's claim for the unauthorized practice of law is frivolous because Plaintiff points to statements that Smith did not make and on topics that cannot constitute legal advice**

53.    There is no reasonable basis for asserting that Smith or Duff & Phelps engaged in the unlawful practice of law. Fundamentally, what Plaintiff presents as legal advice is that "Duff & Phelps and Smith expressly and by their silence gave to Protégé the false legal advice that Z-Medica was expressly subject to the NDA." (Compl. ¶ 125.)

54.    The only statement to the effect that Z-Medica was subject to the NDA that Plaintiff points to is Exhibit F to the Complaint. (Compl. ¶ 84.) But that email was not sent by Smith. (*See* Compl. Ex. F.) And Plaintiff's allegation that Smith gave legal advice "by [his] silence" is insufficient (to say the least). (*See* Compl. ¶ 125.)

55.    Moreover, the statements and "silence[s]" Plaintiff complains of were incidental to the financial services consulting work Duff & Phelps was engaged to perform, i.e., brokering the sale of the Plaintiff's company.  For incidental legal advice to be considered the unauthorized practice of law, the recipient must have requested legal advice, and it must involve a difficult or doubtful legal question. *Gardner v. Conway*, 48 N.W.2d 788, 796 (Minn. 1951). Whether a question is difficult or doubtful is judged against the knowledge of a reasonably intelligent layman who is reasonably familiar with similar transactions. *Id.* And the legal questions involved must be ones "which, to safeguard the public, reasonably demand the application of a trained legal mind." *Id.*

56.    Plaintiff never requested advice on a difficult or doubtful legal question. It did not do so from Duff & Phelps. And it did not do so from Smith.

57.    Moreover, the email (again, not from Smith) saying that Duff & Phelps "have a signed non-disclosure agreement in place with DW Healthcare/Zmedica and they would like to have a call" does not answer a difficult or doubtful legal question. (Compl. Ex. F.)

58.    Plaintiff instead solicited and received legal advice from its own attorney and an attorney for one of its investors before the NDA was sent to Schillinger for signature. Plaintiff's attorney made revisions to the NDA. Plaintiff received so much legal advice from actual attorneys, in fact, that one of its owners joked, "[t]his will be the most thoroughly reviewed NDA when we're done with it.... Sorry for the extra layer." Plaintiff knew that discussions would involve "DW Healthcare/Zmedica," and if it had any questions about whether the NDA covered both entities, it should have asked its attorney— but it certainly did not ask for or receive legal advice from Smith. There is "'no reasonable basis in fact and law'" for the claim against Smith. *See Murphy*, 699 F.3d at 1031 (citation omitted). The inclusion of the basis claim for the unlawful practice of law is emblematic of the lengths that Plaintiff has gone to prevent this Court's assertion of subject matter jurisdiction.

> **c.    Plaintiff's petition for a writ of mandamus to Smith is also frivolous because this matter arises out of a private commercial dispute**

59.    Mandamus is an order compelling a public official to perform an official duty—it is wholly inapplicable to a commercial dispute between private parties.

> Mandamus is an extraordinary remedy that is available only to compel a duty clearly required by law. In order to obtain mandamus relief, a petitioner must show that the defendant: (1) failed to perform an official duty clearly imposed by law; (2) that, as a result, the petitioner suffered a public wrong

– 17 –

> specifically injurious to the petitioner; and (3) that there is no
> other adequate legal remedy.

*N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004).

60.    Plaintiff does not allege that Smith has any official duties. Of course he does not, because he is a private citizen.

61.    Plaintiff does not allege any duty clearly required by law. To satisfy that standard "legal right to the act demanded [must be] so clear and complete as not to admit any reasonable controversy. Similarly, mandamus will lie only to compel performance of a duty which the law clearly and positively requires." *Day v. Wright County*, 391 N.W.2d 32, 34 (Minn. Ct. App. 1986). The only prospective relief Plaintiff identifies is that Duff & Phelps and Smith should pay Plaintiff's legal costs in the Related Federal Action and initiate (or pay for) an arbitration against DWHP. (Compl. ¶¶ 79–81, 99, 117.) The only statute Plaintiff cites is a prohibition on the unauthorized practice of law, which (aside from underlying one of Plaintiff's more frivolous claims) does not "clearly and positively" command Duff & Phelps or Smith to fund Plaintiff's litigation against Z-Medica or DWHP.

62.    Plaintiff's allegations amount at most to a private wrong allegedly perpetrated by non-public actors, not the public wrongs that mandamus is intended to rectify.

## C.    The requirements for diversity jurisdiction exist concerning Plaintiff and Duff & Phelps

63.    Plaintiff and Duff & Phelps are citizens of different states. Plaintiff is a citizen of Minnesota. Duff & Phelps is a citizen of Delaware and New York.

64.    The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff estimates the value of the sale that was not accomplished (for which it blames Duff & Phelps) was at least $23,333,333.33. (Compl. ¶¶ 92, 152.) Plaintiff alleges that all companies that were interested in delivering its product to the human market decided not to. (Compl. ¶ 95.) Plaintiff alleges that it wants Duff & Phelps to commence (or pay for Plaintiff's commencement of) an arbitration against DWHP and to pay for Plaintiff's Related Federal Action against Z-Medica. (Compl. ¶ 99.)

**WHEREFORE**, for the reasons set forth above, Defendants remove this action from the Minnesota District Court for the County of Hennepin, Fourth Judicial District to the United States District Court for the District of Minnesota.

DATED:    December 23, 2019

<div style="margin-left: 40%">

*/s/ John Pavelko*
David R. Marshall (#0184457)
John P. Pavelko (#0398495)
FREDRIKSON & BYRON, P.A.
200 South Sixth St., Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000
dmarshall@fredlaw.com
jpavelko@fredlaw.com

Stephen V. D'Amore (*pro hac vice forthcoming*)
Scott M. Ahmad (*pro hac vice forthcoming*)
Ross J. Corbett (*pro hac vice forthcoming*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601

</div>

(312) 558-5934
SDamore@winston.com
SAhmad@winston.com
RCorbett@winston.com

*Counsel for Defendants Duff & Phelps*
*Securities LLC and Philip Smith*