## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

PROTÉGÉ BIOMEDICAL, LLC,                          Civil No. 19-3152 (JRT/HB)

                        Plaintiff,

v.                                          **MEMORANDUM OPINION AND ORDER**

DUFF & PHELPS SECURITIES, LLC, and
PHILIP I. SMITH,

                        Defendants.

---

Jack Y. Perry and Kristine M. Boylan, **TAFT STETTINIUS & HOLLISTER LLP,** 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Plaintiff.

Stephen V. D'Amore, Ross J. Corbett, and Scott Ahmad, **WINSTON & STRAWN LLP**, 35 West Wacker Drive, Chicago, IL 60601; David R. Marshall, **FREDRIKSON & BYRON**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for Defendants.


This action arises out of a contract dispute between Plaintiff Protégé Biomedical, LLC and Defendants Duff & Phelps, LLC and its employee Phillip Smith (collectively, "Defendants"). Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiffs filed a Motion to Remand pursuant to 28 U.S.C. § 1447(c). After the Court heard arguments on these motions, Protégé filed a Motion to Amend its Complaint, which was taken under advisement by the Magistrate Judge. Because Protégé fails to plead any colorable claim against Smith, the Court will find that

Smith was fraudulently joined to the action and, consequently, will dismiss all of Protégé's claims against him and deny Protégé's Motion to Remand. Additionally, because Protégé fails to state any plausible claim against Duff & Phelps, the Court will find that Protégé fails to allege any plausible claims against Duff & Phelps but will stay its Order dismissing Protégé's Complaint until after the Magistrate Judge rules on whether Protégé's post-argument Motion to Amend should be granted.

**BACKGROUND**

**I. FACTUAL BACKGROUND**

**A. The Parties**

Protégé is a Minnesota LLC that was founded in 2011 by Michael and Susan Wuollett. (Am. Notice of Removal at 2, Ex. 1 ("Compl.") ¶¶ 4–5, Dec. 30, 2019, Docket No. 13.) Protege specializes in researching, inventing, and developing blood-clotting products. (Compl. ¶ 6.) Protégé's products are available for sale on the animal-health marketplace and have recently been cleared for sale in the human-health marketplace by the Food and Drug Administration ("FDA"). (*Id.* ¶ 7.) Protégé keeps certain information collected in its work as trade secrets. (*Id.* ¶ 8.)

Duff & Phelps is a financial advising firm based in New York with an office located in Minnesota. (*Id.* ¶ 10.)

Phillip Smith is a Minnesota resident and the Managing Director of Duff & Phelps's Healthcare Mergers and Acquisitions department.  (*Id.* ¶¶ 11–12.)  Smith works out of Duff & Phelps's Minnesota office.  (*Id.* ¶¶ 11–12.)

### B.  The Engagement Agreement

In December 2017, Protégé contracted with Duff & Phelps to assist Protégé in its efforts to find a buyer for Protégé.  (*Id.* ¶ 23, Ex. B (the "Engagement Agreement").)  The Engagement Agreement included the following relevant provisions:

### 1.  Confidentiality Clause

The Engagement Agreement included a confidentiality clause requiring Duff & Phelps to

> keep confidential all nonpublic information provided to it by [Protégé] until the earlier to occur of (i) the date five years from the date of this Agreement or (ii) the date such information shall have been made publicly available by [Protégé] or by others without breach of a confidentiality agreement, and shall not disclose such information to third parties other than to such of its employees and advisors as D&P determines have a need to know in connection with this Agreement or a potential Transaction.

(Engagement Agreement ¶ 9.)

### 2. Choice of Law & Express Release of Fiduciary Duty

The Engagement Agreement included a choice-of-law provision choosing New York Law to govern the agreement, (*Id.* ¶ 16), and expressly noted that Duff & Phelps "is not and shall not be construed as a fiduciary of [Protégé] . . . ." (*Id.* ¶ 18.)

### 3. Indemnification and Corporate Liability Clause

The Engagement Agreement required Protégé to indemnify and hold harmless to "the fullest extent" of the law Duff & Phelps and its employees ("Indemnified Persons") from all liability unless that liability is "judicially determined to have resulted primarily and directly from D&P's or such Indemnified Person's willful misconduct or gross negligence or related to a breach by D&P of this Agreement."  (*Id.*, Schedule A ¶ A.)

Additionally, the Engagement Agreement notes that "[t]he obligations of D&P are solely corporate obligations. No director, officer, employee, agent, shareholder or controlling person of D&P shall be subjected to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement." (*Id.*, Schedule A ¶ E.)

### C. The Non-Disclosure Agreement

On January 19, 2018, Duff & Phelps, through Smith, reached out to Doug Schillinger, a Managing Director at DW Healthcare Partners ("DWHP"), a private equity investment firm, who also sat on the Board of Directors of Z-Medica, to initiate a

discussion about Z-Medica acquiring Protégé.  (Compl. ¶ 13–16, 22, 82, Ex. E.)  Z-Medica, like Protégé, manufactures and sells hemostatic blood-clotting products.   (*Id.* ¶ 19.)  Protégé alleges that Duff & Phelps, acting through Smith, assumed Schillinger to be an agent of Z-Medica when it reached out to him.  (*Id.* ¶ 82.)

On January 23, 2018, Schillinger and Smith, acting on behalf of Protégé, signed a non-disclosure agreement ("the NDA") for "Project Falcon," an internal reference for Protégé.  (*Id.* ¶¶ 70, 83, Ex. D (the "NDA").)  Protégé alleges that the NDA was created by Duff & Phelps and made Duff & Phelps exclusively responsible for all communication between the "Buyer" and Protégé. (Compl. ¶¶ 70–71; NDA ¶ 10.)  Even so, Protégé had its own team of lawyers review, edit, and approve the NDA before authorizing Duff & Phelps to send the NDA to Schillinger to execute.  (Aff. of Jack Y. Perry ¶ 3, Ex. X at 2–3, 6–16, Jan. 13, 2020, Docket No. 27–1.)

Schillinger signed the NDA and sent it back to Duff & Phelps.  The body of the NDA does not identify either Z-Medica or DWHP, instead stating, "[t]he _____ ("Buyer") is interested in obtaining information about [Protégé] in order to study the feasibility of Buyer's purchase of [Protégé]."  (NDA at 1.)  Schillinger listed his company only as DWHP and his title as Managing Director below his signature on the NDA.  (*Id.* at 5.)  Despite this, Protégé alleges Duff & Phelps continued to assume Schillinger was an agent for Z-Medica, making Z-Medica subject to the NDA.  (Compl. ¶ 84.)  To support this assertion, Protégé

points to an email from Duff & Phelps employee Adam Stormoen to the Wuolletts informing them that "DW Healthcare/Zmedica" (sic) had signed the NDA.  (*Id.*, Ex. F.)

**D. The Disclosure of Confidential Information, the Failed Deal, and the Cease-and-Desist Letter**

On February 9, 2018, shortly after Schillinger executed the NDA, the Wuolletts attended a conference call with Schillinger and two directors from Z-Medica, along with representatives from Duff & Phelps, including Smith, to discuss the possibility of Z-Medica acquiring Protégé.  (Compl. ¶ 85.)  Protégé alleges that Mike Wuollett, before disclosing Protégé's confidential information on the call, stated that "[s]ince we're all under an NDA," he could discuss the confidential information.  (*Id.*)  Protégé alleges that no one from Z-Medica denied being subject to the NDA nor did Smith or anyone from Duff & Phelps say Z-Medica was not subject to the NDA.  (*Id.*)  Mike Wuollett then disclosed Protégé's confidential information on the call.  (*Id.* ¶ 86.)

In the months immediately following the February 9, 2018 call, Protégé alleges that Z-Medica misappropriated the confidential information Protégé shared to apply for a continuation of a patent (the "'106 Patent").  (*See Id.* ¶¶ 88–93.)  On May 5, 2018, after acquiring the patent that allegedly incorporated Protégé's confidential information, Z-Medica backed out of the potential deal to acquire Protégé.  (*Id.* ¶ 92.)

**E. Related Case Against Z-Medica and Subsequent Settlement**

On November 16, 2018—approximately one year before the instant action against Duff & Phelps was filed—Protégé commenced an action against Z-Medica alleging, among other things, that Z-Medica breached the NDA when it used the confidential information Protégé disclosed to apply for the '106 Patent. (*Id.* ¶ 96.)

On July 24, 2019, however, the Court found that Protégé failed to plead sufficient facts to show that Schillinger was an agent of Z-Medica when Schillinger signed the NDA and thus, Z-Medica was not subject to the NDA. The Court therefore dismissed Protégé's claim that Z-Medica breached the NDA without prejudice. *Protégé Biomedical, LLC v. Z-Medica, LLC*, 394 F. Supp. 3d 924, 938 (D. Minn. 2019). Protégé and Z-Medica subsequently agreed to settle their claims, and the Court entered a Final Consent Judgment and Permanent Injunction on August 13, 2020. (ECF No. 18-cv-3227, Docket No. 407.)

**II. PROCEDURAL HISTORY**

On November 27, 2019, Protégé filed this action against Duff & Phelps and Smith in state court in Hennepin County. (*See* Compl.; *see also* Am. Notice of Removal ¶ 1.)

On December 23, 2019, Duff & Phelps filed a Notice of Removal arguing that this Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a) because Smith, a Minnesota resident, was fraudulently joined to this action to evade Federal Court jurisdiction. (Am. Notice of Removal ¶ 16.)

On January 10, 2020, Defendants filed a joint Motion to Dismiss seeking dismissal of Protégé's Complaint in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (Mot. to Dismiss, Jan. 10, 2020, Docket No. 15.)

On January 13, 2020, Protégé filed a Motion to Remand arguing the Court lacked subject matter jurisdiction because Smith was not fraudulently joined.  (Mot. to Remand, Jan. 13, 2020, Docket No. 21.)

On April 29, 2020, the Court heard arguments from the parties on both motions. (Minute Entry, Apr. 29, 2020, Docket No. 45.)  Approximately two weeks later, Protégé filed a Motion to Amend the Pleadings and sought to add facts, arguments, and claims to its Complaint.  (Mot. to Amend, May 12, 2020, Docket No. 46.)  Protégé's Motion to Amend was argued before the Magistrate Judge who took that matter under advisement.[1]  (Minute Entry, June 3, 2020, Docket No. 67.)

The Court will first discuss Protégé's Motion to Remand before turning to Defendants' Rule 12(b)(6) Motion to Dismiss.

_____

[1] Whether the Motion to Amend is granted does not affect Protégé's Motion to Remand.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (noting that whether removal was proper is "determined according to the plaintiffs' pleading at the time of the petition for removal"); *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969) ("It is the situation at the time of removal which is determinative. A subsequent change, such as the plaintiff's post-removal voluntary reduction of his claim to less than the jurisdictional amount, does not defeat federal jurisdiction acquired through removal.").

**DISCUSSION**

**I.  MOTION TO REMAND**

   **A.  Standard of Review**

A defendant may remove a civil action to federal court only if the action could have been filed originally in federal court.  *See* 28 U.S.C. § 1441(a)–(b); *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000).  The party seeking removal bears the burden of demonstrating that removal was proper, and "all doubts about federal jurisdiction must be resolved in favor of remand."  *Cent. Iowa Power Co–op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).

When a plaintiff has joined a non-diverse party as a defendant in its state case and does not allege a federal question, the defendant may only avoid remand "by demonstrating that the non-diverse party was fraudulently joined." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). To demonstrate fraudulent joinder, the non-diverse defendant must show that "no reasonable basis in fact and law" exists for the claims brought against them.  *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012) (quoting *Filla*, 336 F.3d at 810).  Put another way, "if there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder."  *Filla*, 336 F.3d at 810 (emphasis in original) (footnote omitted).

Defendants allege that Smith was fraudulently joined.  The Complaint alleges five Counts against Smith: (I) gross negligent breach-of-contract; (II) breach-of-contract; (III) breach of common law duties and Minn. Stat. § 481.02 for the unauthorized practice of law; (IV) declaratory judgment based on Counts I–III; and (V) writ of mandamus based on Counts I–III. Each Count will be examined below to determine if Protégé alleges a colorable claim against Smith.

### B.  Count I: Gross Negligent Breach-of-Contract Against Smith

Under both Counts I and II, the parties' main dispute centers on whether Smith is a party to the Engagement Agreement or can otherwise be held personally liable under the Engagement Agreement.  Resolution of this dispute is unnecessary to decide Count I, however, as claims for negligent or gross negligent breach-of-contract do not exist under New York law and the parties agree New York law governs the contract.[2] *City of New York v. 611 W. 152nd St., Inc.*, 273 A.D.2d 125, 126 (2000) (noting "claims based on negligent or grossly negligent performance of a contract are not cognizable").[3]

---

[2] Even if New York did recognize claims for gross negligent breach-of-contract, Smith cannot be held personally liable under the contract because the Court finds he is not a party to it, as discussed in Section I.C below.

[3] *See also Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013) (dismissing a claims for breach-of-contract based on "gross negligence" because "New York law does not recognize a cause of action for a 'negligent' breach of contract").

Accordingly, the Court finds no reasonable basis in fact and law for Protégé's claim against Smith for gross negligent breach-of-contract.

## C. Count II: Breach-of-Contract Against Smith for Failure to Adhere to the Confidentiality Clause

Protégé argues Smith is personally liable for breach of the contract between Duff & Phelps and Protégé because he is a contract signatory-agent of Duff & Phelps.

Under New York law, "an agent for a disclosed principal 'will not be personally bound [to a contract] unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Savoy Record Co. v. Cardinal Export Corp.*, 15 N.Y.2d 1, 4 (1964) (quoting *Mencher v. Weiss*, 306 N.Y. 1, 4 (1953)).  The factors that the Court may examine to determine the signatory's intent "include the length of the contract, the location of the liability provision(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation."  *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994), as amended (Sept. 9, 1994).

New York courts will only impute personal liability to an agent-signatory "in the face of overwhelming evidence of the signatory's intention to assume personal liability" which occurs "only in rare cases."  *Lerner v. Amalgamated Clothing & Textile Workers*

*Union*, 938 F.2d 2, 5 (2d Cir. 1991).  For example, in *Paribas Properties, Inc. v. Benson*, a New York Court found that an agent-signatory could be held personally liable when (1) the signatory was the President and principal shareholder of a corporation; (2) the contract was three pages long and not a trap for the unwary; (3) a paragraph of the contract explicitly assigned personal liability to the signatory and was located directly above the signature line; (4) the signatory's name appeared in the agreement itself; and (5) the parties negotiated the agreement.  146 A.D.2d 522, 525–26 (1989).

Here, even when viewing the facts in a light most favorable to Protégé, it is clear that no New York court would hold Smith personally liable under the Engagement Agreement.  Although Smith's name does appear once in the Engagement Agreement itself and the Engagement Agreement is reasonably short (nine pages), the other factors weigh heavily against his personal liability.  First, the Engagement Agreement does not include any provision expressly assigning personal liability to Smith, let alone such a provision that appears in close proximity to Smith's signature line.  *Cf. id.*; *Lollo*, 35 F.3d at 35 (noting a clause expressly providing personal liability "is prominently displayed immediately above the signature line").  In fact, the Engagement Agreement expressly states Duff & Phelps employees will not be held personally liable for breach-of-contract and that only corporate liability would attach.

Second, although the agreement was not a contract of adhesion, the negotiated agreement expressly stated no Duff & Phelps employee could be held personally liable.

Through negotiations, the parties could have included a clause holding Smith (or any other Duff & Phelps employee) personally liable, but did not.  Therefore, this factor also weighs in Smith's favor.  *Cf. Paribas*, 146 A.D. at 525 (holding the signatory liable when the contract was negotiated and included a personal liability clause for the signatory).

Third, unlike *Paribas*, Smith is not the president and principal shareholder of Duff & Phelps, but rather the managing director of its Healthcare Mergers and Acquisitions department.  *Id.*

Based on the above factors, the Court concludes that this is not the "rare" case where "overwhelming evidence" exists to show Smith intended to take personal liability under the contract.  *Lerner*, 938 F.2d at 5.  Accordingly, the Court finds no reasonable basis in fact and law for Protégé's claims against Smith for breach-of-contract.

### D.  Count III: Smith's Common Law and Statutory Duties

Defendants argue that Protégé fails to make a colorable claim against Smith for (1) breach of fiduciary duty; (2) breach of principal-agent responsibilities; (3) professional malpractice/breach of professional duties;[4] and (4) for the unlawful practice of law.

---

[4] The parties appear to agree that claims for breach of fiduciary duty, breach of agency duties, and breach of professional duties are governed by New York law because they all "raise issues of performance" under the Engagement Agreement.  *Northwest Airlines Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997).

### 1.  Breach of Fiduciary Duty

"To state a breach of fiduciary duty claim under New York law, a plaintiff must plead: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018) (cleaned up).  No fiduciary duty is owed when an arm's length contract includes a clear statement disclaiming a fiduciary relationship.  *Id.*[5]

Here, no fiduciary duty is owed because the Engagement Agreement is an arm's length contract and it includes a clear statement disclaiming the creation of any fiduciary relationship between Duff & Phelps and Protégé.  *Id.*  Moreover, even if there was some type of fiduciary relationship established, Protégé's claim would still fail because it cannot hold Smith personally liable under the Engagement Agreement.  Accordingly, the Court finds no reasonable basis in fact and law for Protégé's claim against Smith for breach of fiduciary duty.

### 2.  Breach of Principal-Agent Relationship

"Whether an agency relationship exists is a mixed question of law and fact." *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003).

---

[5] *See also LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F .Supp. 3d 504, 523 (S.D.N.Y. 2014) ("[N]o fiduciary duty is owed where explicit contractual disclaimers of fiduciary duty apply.").

"Establishment of such relationship requires facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent." *Id.*

Here, a principal-agent relationship existed between Duff & Phelps and Protégé by way of the Engagement Agreement, but no principal-agent relationship existed between Protégé and Smith personally.  Because Smith was not personally liable under the Engagement Agreement, there is neither manifestation of intent by Protégé to grant Smith authority, nor agreement by Smith.  Accordingly, the Court finds no reasonable basis in fact and law for Protégé's claim against Smith for breach of principal-agent relationship.

### 3.   Professional Malpractice/Breach of Professional Duty

A breach of a duty to perform professional services is a "species of negligence" which requires a showing of "(1) negligence, (2) which is the proximate cause of (3) damages."  *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000).

Plaintiff argues that the Court must find that its claim in tort against Smith for negligent performance of professional services is colorable because New York courts are split on whether "financial advisors" qualify as professionals for purposes of a professional negligence claim.

Even assuming that financial advisors qualify as professionals, Protégé cannot maintain this claim against Smith because it is a claim for ordinary negligence and Protégé

waived all claims against Duff & Phelps for ordinary negligence in the Engagement

Agreement. *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y.

1993) ("New York law generally enforces contractual provisions absolving a party from its

own negligence" but not for gross negligence.) Accordingly, the Court finds no reasonable

basis in fact and law for Protégé's claim against Smith for professional negligence.

### 4. Unauthorized Practice of Law Under Minn. Stat. § 481.02

To maintain a claim for the unlawful practice of law under Minnesota law, Protégé

must allege (1) that it requested legal advice; (2) Smith provided legal advice "as part of

his regular course of conduct;" and (3) the question involved "difficult or doubtful legal

questions" and a trained lawyer's opinion was necessary "to safeguard the public."

*Gardner v. Conway*, 48 N.W.2d 788, 796 (Minn. 1951) (noting that when "incidental to

another transaction" the above three elements are necessary to show unlawful practice

of law under Minn. Stat. § 481.02).[6]

---

[6] Protégé appears to confuse a claim for the unlawful practice of law under Minn. Stat. § 481.02 (which Protégé refers to as the "contract theory" of the claim) with a common-law claim for malpractice (which Protégé refers to as the "tort theory" of the claim). The Court analyzes the proper elements for the unlawful practice of law claim above, but notes that it would also find that Protégé fails to allege a colorable claim of malpractice against Smith because no attorney-client relationship existed. Protégé never sought legal advice from Smith, Smith never rendered legal advice to Protégé, and Smith is not and never held himself out to be an attorney. Even if Protégé's claim did not fail for these reasons, it would have been unreasonable for Protégé to rely on Smith's legal advice because Protégé knew Smith was not a lawyer and, in fact, Protégé employed and/or retained its own lawyers to review, edit, and approve legal documents it received from Duff & Phelps, including the NDA in question. *See Togstad v. Vesely, Otto, Miller*
*(footnote continued on next page)*

Protégé's claim fails at least the first two elements here.  Protégé never requested legal advice from Smith and, even if it had, Smith never provided Protégé with legal advice.[7]  Accordingly, the Court finds no reasonable basis in fact and law for Protégé's claim against Smith for the unlawful practice of law.

### 5.  Conclusion on Count III

Because Protégé fails to allege colorable claims against Smith for (1) breach of fiduciary duty; (2) breach of agent-principal relationship; (3) breach of professional duties; and (4) the unlawful practice of law, the Court finds no reasonable basis in fact and law for any of the claims alleged against Smith in Count III.

---

& Keefe, 291 N.W.2d 686, 694 n.4 (Minn. 1980) (noting that an attorney-client relationship exists "whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice").

Protégé also cites a case from Ohio for the proposition that financial advisors can be found liable for the unlawful practice of law when they prepared and reviewed contracts. *Trumbull Cty. Bar Ass'n v. Hanna*, 684 N.E.2d 329, 331 (Ohio 1997).  Besides being non-precedential, the case is easily distinguishable as the Ohio Court makes clear that the financial advisors were found liable for the unauthorized practice of law because they created a trust for the plaintiff without recommending the plaintiff contact their attorneys.  Here, neither Duff & Phelps nor Smith created any legal documents for Protégé on their own; they specifically sent draft documents to Protégé's own, independent attorneys who reviewed, edited, and approved the documents.

[7] Protégé points to an email that Protégé alleges contains legal advice from "Duff & Phelps and Smith," but even if the email does contain legal advice, which is disputed, the email was not sent by Smith—it was sent by Adam Stormoen, another Duff & Phelps employee, who is not a party to this case.

### E.   Count IV: Declaratory Judgment Against Smith

Protégé acknowledges that Count IV for declaratory judgment is predicated on the Court finding a colorable claim against Smith in Counts I–III.  Because the Court finds Counts I–III contain no colorable claims, it also finds no reasonable basis in fact and law for Protégé's declaratory judgment claim contained in Count IV.

### F.   Count V: Writ of Mandamus Against Smith

"Mandamus is an extraordinary remedy."  *State v. Pero*, 590 N.W.2d 319, 323 (Minn. 1999).  To obtain a writ of mandamus, a plaintiff must show that (1) the defendant "failed to perform an official duty clearly imposed by law, (2) which caused a public wrong specifically injurious to [Protégé], and (3) for which there is no other adequate legal remedy." *Madison Equities, Inc. v. Crockarell*, 889 N.W.2d 568, 571 (Minn. 2017) (cleaned up).

Protégé's claims for mandamus against Smith are not colorable.  First, Protégé's mandamus claim relies on the viability of the claims included in Counts I–III, as these are the only official duties Smith allegedly violated.  Because these claims are not colorable, Protégé fails to allege Smith failed to perform an "official duty" let alone one that was clearly imposed by law.[8]  Second, Protégé fails to adequately allege the "public wrong" it

---

[8] The Court also notes that if any of the claims included in Counts I–III were colorable, Protégé would have an adequate legal remedy thereby vitiating the third mandamus element.

suffered.  Instead, Protégé makes only conclusory allegations that a public wrong existed based on "Duff & Phelps and Smith's breaches and anticipatory breaches of their contractual 'obligations' and common law and statutory duties to Protégé."  But if any wrong existed here, it would be a private one between two commercial entities based on a simple dispute of contract.  Accordingly, the Court finds no reasonable basis in fact and law for Protégé's claim for Mandamus against Smith.

### G.  Conclusion on Motion to Remand

In sum, the Court finds that "no reasonable basis in fact and law" exist for any of the claims Protégé alleges against Smith.  *Aurora Loan Servs.*, 699 F.3d at 1031 (quoting *Filla*, 336 F.3d at 810).  Accordingly, the Court finds that Smith was fraudulently joined, and will dismiss all claims alleged against him and deny Protégé's Motion to Remand. Because the remaining parties are completely diverse, the Court has subject matter jurisdiction and will decide Duff & Phelps's Motion to Dismiss pursuant to Rule 12(b)(6).

## II.  DUFF & PHELPS'S MOTION TO DISMISS

### A.  Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the Complaint as true to determine if the Complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although the Court accepts a complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a Complaint "does not need detailed factual allegations" but must be more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"When considering a Rule 12(b)(6) motion, 'the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.'"  *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

### B.  Count I: Gross Negligent Breach-of-Contract Against Duff & Phelps

For the same reasons Count I fails against Smith, it fails against Duff & Phelps.  New York does not allow claims for "gross negligent" breach of contract.  *See City of New York*, 273 A.D.2d at 126; *Avazpour*, 937 F. Supp. 2d at 365.

### C.   Count II: Breach-of-Contract for Failure to Adhere to the Confidentiality Clause

Protégé alleges in Count II that Duff & Phelps breached the Engagement Agreement by violating the confidentiality provision, which prevents Duff & Phelps from disclosing such information to third parties.  But Protégé fails to claim that Duff & Phelps disclosed confidential information to anyone.  Instead, Protégé asserts that Duff & Phelps breached the contract by failing to prevent Protégé from disclosing confidential information to a third party, which is not required by the contract.  Because the Court may not read into the contract obligations the parties themselves did not include, *Tonking v. Port Auth. of New York & New Jersey*, 821 N.E.2d 133, 135 (N.Y. 2004), Protégé fails to plausibly allege a claim for breach-of-contract against Duff & Phelps.

### D.   Count III: Duff & Phelps Common Law and Statutory Duties

Protégé's claims against Duff & Phelps in Count III fail for many of the same reasons they fail against Smith.  First, Protégé's claim for breach of fiduciary duty fails because the arm's length Engagement Agreement clearly disclaims such a duty.  *Spinelli*, 903 F.3d at 207.  Second, Protégé's claim for breach of principal-agent responsibilities fails because Protégé cannot use a claim in tort to recover for a failed breach-of-contract claim.  *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*, 580 F. Supp. 2d 285, 293 (S.D.N.Y. 2008) ("To bring a tort action along side [sic] a contract claim, the alleged breach of duty must be distinct from, or in addition to, the breach of contract." (citing *Clark–Fitzpatrick,*

*Inc. v. Long Island R.R.*, 516 N.E.2d 190 (N.Y. 1987))).[9]  Third, Protégé's claim for breach of

a duty to perform professional services is a "species of negligence," *Trafalgar Power*, 227

F.3d at 15, and Protégé waived all claims for ordinary negligence in the Engagement

Agreement.[10]  *See Colnaghi*, 611 N.E.2d at 284.  Fourth, Protégé's claim against Duff &

Phelps for the unlawful practice of law fails because Protégé fails to allege it requested

legal advice from Duff & Phelps or that such legal advice was provided.  *Gardner*, 48

N.W.2d at 796.

### E.  Count IV: Declaratory Judgment

Protégé's claims for declaratory judgment against Duff & Phelps depend on the

plausibility of its claims in Counts I–III.  Because the Court find that Protégé has failed to

plausibly allege any claim in Count I–III, Count IV also fails.

---

[9] *See also See N. Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 239 N.E.2d 189, 193 (N.Y. 1968)
(dismissing claims in tort arising from the same facts as the alleged breach-of-contract but noting
that "a contracting party may be charged with a separate tort liability arising from a breach of a
duty distinct from, or in addition to, the breach of contract"); *Robin Bay Assocs., LLC v. Merrill
Lynch & Co.*, No. 07-376 (JMB), 2008 WL 2275902, at *3 (S.D.N.Y. June 3, 2008) ("In New York,
'[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract
claim cannot stand.'" (quoting *William Kaufman Org., Ltd. v. Graham & James LLP*, 269 A.D.2d
171, 173 (N.Y. App. Div. 2000))); *Med. Research Assocs., P.C. v. Medcon Fin. Servs., Inc.*, 253 F.
Supp. 2d 643, 649–50 (S.D.N.Y. 2003) (dismissing claims in tort based on same allegations of
breach).

[10] And even if Protégé had not waived such claims, its claim here still fails because it seeks to
recover in tort for an alleged breach-of-contract.

**F.  Count V: Writ of Mandamus**

Protégé's claim for a Writ of Mandamus against Duff & Phelps fails for the same reasons it fails against Smith.  A writ of mandamus is an "extraordinary remedy" but this case is not extraordinary.  *Pero*, 590 N.W.2d at 323.  It is a simple contractual dispute between two private, commercial entities.  Because of this, the Court finds that Protégé's claim for Writ of Mandamus against Duff & Phelps is not plausibly alleged.

**G.  Conclusion on Motion to Dismiss**

Because the Court finds that Protégé fails to allege any plausible claims against Duff & Phelps, if the Magistrate Judge denies the Motion to Amend, the Court will grant Duff & Phelps' Motion to Dismiss.  The Court notes that it appears that at least some of the claims alleged against Duff & Phelps (including but not necessarily limited to, Counts I and V, and at least some, if not all, of the claims included in Count III) are beyond saving. Even so, the Court will stay its order on dismissal until after the Magistrate Judge rules on the Motion to Amend.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion to Remand [Docket No. 21] is **DENIED**;

2.  All claims against Defendant Philip I. Smith are dismissed and Defendant Smith

    is terminated from this action.

3.  Defendant Duff & Phelps's Motion to Dismiss [Docket No. 15] is **STAYED**

    pending the Magistrate Judge's Ruling on Plaintiff's Motion to Amend.


DATED:  September 29, 2020                    _____
at Minneapolis, Minnesota.                           JOHN R. TUNHEIM
                                                      Chief Judge
                                              United States District Court